**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JULES WILLIAMS, | ) | |
| Plaintiff, | ) | |
| vs | ) | Civil Action No. 3:23-130 |
| | ) | Magistrate Judge Dodge |
| SGT. GIGLIOTTI, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Jules Williams ("Williams"), an inmate incarcerated at the State Correctional Institution at Houtzdale ("SCI Houtzdale"), brings this pro se civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Sergeant Nicholas Gigliotti ("Gigliotti"). His claims arise out of an incident that occurred in July 2022. Williams alleges that Gigliotti directed another inmate, Gabriel Pittman, to attack him and then falsely wrote Williams up for a misconduct. As a result, he was improperly sent to the Restricted Housing Unit ("RHU") on Pre-Hearing Confinement ("PHC") status. The misconduct was later dismissed and he was returned to the prison general population.

Currently pending before the Court for disposition is Gigliotti's motion for summary judgment. Williams has failed to file a response to the motion, despite several Court orders directing him to do so. For the reasons that follow, the motion will be granted.[1]

---

[1] Both parties have consented to jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) (ECF Nos. 21, 22.).

## I. Relevant Procedural History

Williams submitted a Complaint without a motion to proceed in forma pauperis ("IFP") or the filing fee on June 15, 2023. Subsequently, he submitted a motion to proceed IFP which was granted, and the Complaint was filed on August 17, 2023. (ECF No. 8.) It contains one claim under the Eight Amendment for "failure to protect" (Count 1), a claim of intentional infliction of emotional distress (Count 2) and a claim of false imprisonment (Count 3). He seeks monetary damages and other relief in his Complaint.

On April 22, 2024, Gigliotti filed a motion for summary judgment (ECF No. 26). The Case Management Order issued in this case and mailed to Williams' address of record set a deadline of June 6, 2024 for his response. (ECF No. 17.) William failed to respond or otherwise communicate with the Court by this deadline.

An order was then issued on July 19, 2024 (ECF No. 32) and mailed to Williams at his address of record that directed him to file a response to the motion by August 1, 2024. He was further notified in the order that if he did not respond the motion, it would be decided without his response. No response was submitted, nor has Williams requested additional time or otherwise communicated with the Court.

## II. Factual Background

At all relevant times, Williams was an inmate at SCI Houtzdale. Gigliotti was the Sergeant for F Unit at that correctional institution. (Defendant's Statement of Material Facts ("DSMF") ¶¶ 1-2) (ECF No. 28.) On July 15, 2022, there was a brief altercation between Williams and Inmate Pittman. Following the incident, both inmates were restrained and examined by medical personnel. Neither inmate complained of or was observed to have any injuries. (*Id.* ¶¶ 3-8 & Exs. C, D.)

Both inmates received misconducts for fighting. After review of Williams' misconduct, the Shift Commander determined that he should be placed in the RHU on PHC status pending disposition of the charge. Williams' disciplinary hearing was held on July 25, 2022, and at its conclusion, the misconduct was dismissed. Williams was then transferred out of the RHU to general population. (*Id.* ¶¶ 9-14 & Exs. B, E.)

Williams then filed Grievance No. 989695 on July 19, 2022 in which he challenged the misconduct. He claimed that although he was attacked by Pittman and did not fight back, Gigliotti issued a false misconduct stating that he observed Williams striking Pittman. He did not request any specific relief in his grievance. The same day, the Facility Grievance Coordinator rejected the grievance for failure to comply with the provisions of DC-ADM 804. (*Id.* ¶¶ 15-17 & Exs. H, I.)[2]

On August 1, 2022, Williams resubmitted his grievance. He complained that although the false misconduct asserted against him was dismissed, he was not returned to the same housing unit and was switched from being a PM worker to an AM worker. He requested reinstatement as a PM worker. On August 1, 2022, the Facility Grievance Coordinator rejected this grievance for failure to comply with DC-ADM 804. Williams did not appeal from this decision, nor did he file any additional grievances related to the fight with Pittman. (*Id.* ¶¶ 18-20 & Exs. H, I.) Grievance No 989695 was not appealed to final review at SOIGA.

Williams did not appeal this decision, nor did he file any additional grievances related to the incident between Pittman and himself. (ECF No. 28 ¶ 20; Exs. H, I.)

---

[2] All facts regarding Williams' grievances and grievance history are supported by the Declaration of Helen Shambaugh, a Grievance Review Officer (ECF No. 29 Ex. I), who reviewed relevant records for Grievance No. 989695.

## III. **Discussion**

A. Standard of Review

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate if there are no genuine disputes as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. County of Centre, Pa.,* 242 F.3d 437, 446 (3d Cir. 2001).

B. Failure to Exhaust Administrative Remedies

Gigliotti contends that Williams has not properly exhausted his claim prior to bringing suit. Whether a prisoner has exhausted administrative remedies is a question of law that is determined by the court, even if that determination requires the resolution of disputed facts. *Small v. Camden County*, 728 F.3d 265, 269 (3d Cir. 2013).

The Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997(e)(a).The Supreme Court has held that prisoners must exhaust their administrative remedies prior to bringing suit, even if the state does not provide the kind of remedy they seek. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 739 (2001); *Nyhuis v. Reno*, 204 F.3d 65 (3d Cir. 2000). The Court has further held that the PLRA requires "proper exhaustion," that is, exhaustion as set forth in the procedures described, in a timely manner and so on. *Woodford v. Ngo*, 548 U.S. 81 (2006).

It is not the plaintiff's burden to affirmatively demonstrate exhaustion. *Jones v. Bock*, 549 U.S. 199, 217 (2007) (holding that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).[3]

[3] As Williams has not responded, there is no evidence in the record to support an argument that the grievance process was unavailable to him. *See Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) ("The PRLA does not require exhaustion of all remedies. Rather, it requires exhaustion of such administrative remedies 'as are available.'")

The Pennsylvania Department of Corrections has adopted a three-part grievance process that inmates must follow. After a grievance is filed, it is subject to an initial review by a correctional official. If dissatisfied with the results of the initial review, an inmate must then appeal to the Facility Manager and then appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). *See* 37 Pa. Code § 93.9; DC-ADM 804; *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004).

The Pennsylvania administrative procedure that inmates must utilize, DC-ADM 804, requires them to "identify individuals directly involved in the events." *See Green v. Maxa*, 2020 WL 1249205, at *5 (W.D. Pa. Mar. 16, 2020). The Court of Appeals has held that, "in the absence of any justifiable excuse, an inmate's failure to properly identify a defendant constitutes a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pennsylvania Dep't of Corrections*, 146 F. App'x 554, 557 (3d Cir. 2005).

Further, DC-ADM 804-1(A)(11)(d) also requires that "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." Thus, an inmate procedurally defaults any claim for monetary relief if he did not seek such relief in his grievance. *See e.g. Wright v. Sauers*, 729 F. App'x 225, 227 (3d Cir. 2018) (affirming the district court's grant of summary judgment for defendant on plaintiff's excessive force claim because plaintiff failed to request monetary relief in his initial grievance)[4]; *Cunningham v. Zubsic*, 2019 WL 134209, at *5 (W.D. Pa. Jan. 8, 2019); *Camacho v. Beers*, 2018 WL 6618410, at *3 (W.D. Pa. Dec. 18, 2018); *Sanders v. Beard*, 2013 WL 1703582, at *6 (M.D. Pa. Apr. 19, 2013).

[4] The court noted that, in *Spruill*, 372 F.3d at 233-35, it held that the policy at that time did not require an inmate to identify the relief sought, but that the prison system subsequently amended its policy to include this requirement.

Williams failed to exhaust his administrative remedies. His initially filed grievance did not request any specific relief, including any monetary compensation. It was rejected. When it was refiled, Williams requested only that he be reinstated to a different kitchen shift. (ECF No. 29 Ex. H.) It was again rejected. Williams did not appeal this decision, nor did he file any additional grievances related to the incident between Pittman and himself. Therefore, he cannot pursue claims arising out of the incidents covered by this grievance.

The Supreme Court has held that "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Gigliotti has properly supported his motion with materials in the record and declarations and Williams has not responded at all. Moreover, even if he had responded to the motion and made the argument that he properly and fully appealed Grievance No. 9896956, or that the appeal process was unavailable to him, he could not support it by relying on the allegation made in the unverified Complaint. *See Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 443 (3d Cir. 2020) (a verified Complaint may be treated as an affidavit for purposes of summary judgment).

Based upon the evidence of record, Williams did not fully and properly exhaust his administrative remedies. Therefore, his claims are procedurally defaulted.

Even if Williams had exhausted his administrative remedies, his claims fail to state a claim upon which relief may be granted, requiring their dismissal.

C. Eighth Amendment Claim

In Count 1, Williams asserts an Eighth Amendment claim against Gigliotti for failure to protect arising out of his allegation that Gigliotti instructed Inmate Pittman to attack him. Gigliotti argues that the record contains no support for this claim, but instead demonstrates that a

fight erupted when Williams demanded an extra dinner tray from Pittman. Further, he contends that the record belies Williams' claim that he was injured in the fight.

Gigliotti has submitted a declaration (ECF No. 29 Ex. A), which states the following. He recalls that, on July 15, 2022, an incident occurred between Williams and Pittman that began when he heard Williams demanded an extra dinner tray. Williams took his tray inside the dorm then returned to the door requesting another tray and continued arguing with Pittman. Although Gigliotti did not see who initiated physical contact, the argument became physical and he radioed control to report an inmate fight. By the time he arrived at the cell approximately ten seconds later, the fight had been broken up by other inmates. Both Williams and Pittman were then handcuffed and escorted to the RHU and Gigliotti wrote up misconducts for both of them for fighting. He states that he did not request that Pittman attack Williams and was not aware of any reports that Williams overheard him do so. (Gigliotti Decl. ¶¶ 5, 11-18, 23.)

Williams also alleges that, in the fight, he received a black eye and a split lip. However, Gigliotti has produced photos taken of Williams immediately after the fight, which do not show any injuries, as well as a medical report that states, "no visual injuries observed." (ECF No. 29 Ex. C.)

Gigliotti can attest to these matters from his own personal knowledge. Fed. R. Civ. P. 56(c)(4). Williams has not responded to these asserted facts and his Complaint is not verified. Therefore, Gigliotti's version of the incident is uncontroverted.

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive

force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (citations omitted).

The undisputed record in this case demonstrates that Gigliotti had no personal involvement in the use of physical force nor did he instruct Inmate Pittman to attack him. In the absence of any evidence of the use of excessive force by Gigliotti, he is entitled to judgment in his favor with respect to Williams' Eighth Amendment claim.

D. State Law Claims

Williams alleges state law claims of intentional infliction of emotional distress (Count 2) and false imprisonment (Count 3). Gigliotti contends that these claims are barred by the doctrine of sovereign immunity.

Under Pennsylvania law, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. § 2310. "Exceptions to sovereign immunity are to be narrowly construed." *Dean v. Commonwealth, Dep't of Transp.*, 751 A.2d 1130, 1134 (Pa. 2000).

There are ten exceptions to sovereign immunity. 42 Pa. C.S. § 8521(a), § 8522(b). However, Pennsylvania courts have held that "intentional tort claims . . . are not within the narrow exceptions set forth in 42 Pa. C.S. § 8522(b)." *Faust v. Commonwealth Dep't of Revenue*, 592 A.2d 835, 839 (Pa. Commw. 1991). *See also Justice v. Lombardo*, 208 A.3d 1057, 1067 (Pa. 2019). "Even where a plaintiff asks for monetary damages against a defendant in his individual capacities, sovereign immunity applies." *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (citation omitted). "Sovereign immunity applies to intentional and negligent torts." *Id.* (citation omitted).[5] Thus, Gigliotti is immune from liability for the state law claims asserted by

[5] By contrast, in an action against a *local* agency or employee, immunity is lost when their

Williams.

Therefore, with respect to Williams' state law claims of intentional infliction of emotional distress (Count 2) and false imprisonment (Count 3), the motion for summary judgment will be granted.[6]

## IV. Conclusion

For these reasons, Gigliotti's motion for summary judgment will be granted.

Appropriate orders follow.

Dated: August 21, 2024

/s/ Patricia L Dodge
PATRICIA L. DODGE
United States Magistrate Judge

cc: Jules Williams
LD-9920
SCI HOUTZDALE
P.O. Box 1000
209 Institution Drive
Houtzdale, PA 16698-1000

---

actions represent a "crime, actual fraud, actual malice or willful misconduct." 42 Pa. C.S. § 8550. This statute is not applicable in this case because Gigliotti is a state employee, not a local employee. *See Yakowicz v. McDermott*, 548 A.2d 1330, 1333 & n.5 (Pa. Commw. 1988) (Commonwealth employees are immune from liability even for intentional torts but that local agency employees lose their immunity defense where their actions constitute a crime, actual fraud, actual malice or willful misconduct), *appeal denied*, 565 A.2d 1168 (Pa. 1989).

[6] Gigliotti also attests in his declaration that he did not have the authority to place Williams in the RHU for PHC; only the shift commander has that authority and in this case the shift commander reviewed the misconducts and determined that both Williams and Pittman should remain in the RHU until the disciplinary hearing. (Gigliotti Decl. ¶¶ 19-20.) *See also* Close Decl. ¶ 13 (ECF No. 29 Ex. F). Thus, the undisputed record also demonstrates that Gigliotti was not responsible for Williams' "false imprisonment" in any event.